**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**



------------------------------------------------------- x

MICHAEL SIGALL and JESSICA SIGALL,
on behalf of plaintiffs and the class members
described herein,

               Plaintiffs,

      vs.

ZIPCAR, INC., ZIPCAR NEW YORK, INC.
and CITIBANK, N.A.,

              Defendants.

------------------------------------------------------- x

**13 CV 4552**

**JUDGE OETKEN**

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.    Plaintiffs Michael Sigall and Jessica Sigall bring this action to secure redress for improper conduct in connection with vehicle damage claims assessed against Zipcar members.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under 15 U.S.C. § 1640 (Truth in Lending Act), 28 U.S.C. § 1331 (general federal question), 28 U.S.C. § 1332(d) (Class Action Fairness Act), and 28 U.S.C. §1367 (supplemental jurisdiction).

3.    Plaintiffs are citizens of New York. Defendants Zipcar, Inc., and Zipcar New York, Inc., are citizens of Delaware and Massachusetts. Citibank is a citizen of South Dakota.

4.    On information and belief, the total damage claims that have been assessed against New York Zipcar members during the last 6 years, and the damage claims that will be assessed in the future, exceed $5 million. Plaintiffs contend that all such claims are unlawful. In addition, defendants sell millions of dollars of "damage waivers" to "waive" the improper charges.

### PARTIES

5.    Plaintiffs Michael Sigall and Jessica Sigall are father and daughter and reside in

1

Manhattan.

6.      Defendant Zipcar, Inc., is a Delaware corporation with its principal place of business at 25 First Street, 4th Floor, Cambridge, MA 02141.  It does business in New York.  Its registered agent and office is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

7.      Defendant Zipcar New York, Inc., is a Delaware corporation with its principal place of business at 25 First Street, 4th Floor, Cambridge, MA 02141.  It does business in New York.  Its registered agent and office is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

8.      Defendants Zipcar, Inc. and Zipcar New York, Inc. operate the world's largest car sharing service.  It is represented to be an alternative to traditional car rental and car ownership.

9.      Zipcar, Inc., describes its service as follows in its annual report on SEC Form 10-K for the year ending December 31, 2012 (original page 4):

> Zipcar operates the world's leading car sharing network. Founded in 2000, we provide the freedom of "wheels when you want them" to over 775,000 members, whom we refer to as Zipsters. We operate our membership-based business in 20 major metropolitan areas and on more than 300 college campuses in the United States, Canada, the United Kingdom, Spain and Austria. We provide Zipsters with self-service vehicles in conveniently located reserved parking spaces in the neighborhoods where they live and work. Our members may reserve cars by the hour or by the day at rates that include gas, insurance and other costs associated with car ownership. Our service is simple and convenient:
>
> - Join. A prospective member joins at zipcar.com and chooses from several subscription plans. The new member will receive his or her Zipcard within days of signing up.
>
> - Reserve. The Zipster selects a specific vehicle in a particular location and reserves it for the desired period of time. The reservation, which can be made online, on a mobile device or over the phone, is sent by a wireless signal to the selected Zipcar.
>
> - Unlock. When the Zipster arrives at the vehicle in its designated parking space, the Zipcar recognizes the member's unique Zipcard and unlocks the doors.
>
> - Drive. The Zipster drives away. At the end of the trip, the member returns the Zipcar to its designated parking space and, using the Zipcard, locks the doors.

10.     Zipcar, Inc., admits it is in competition with regular car rental companies.  Its 10-K states (original page 8): "Traditional Rental Car Companies. We also compete with traditional rental car companies, which typically have centralized locations near airports and transportation hubs, charge daily rates which exclude the costs of gas and insurance and primarily target business travelers and families on vacation. To offer a competitive alternative to traditional car rental, we intersperse our car locations throughout cities and university campuses within an easy walk of where Zipsters live and work. Our members can reserve Zipcars for as short a period as one hour, and our rates include the costs of gas and insurance."

11.     Defendants are in the process of being acquired by Avis-Budget, as their business is closely related to traditional car rental companies.

12.     Defendant Citibank, N.A., is a federally chartered corporation with its principal place of business located at 701 East 60th Street North, Sioux Falls, SD 57104.  It issues Citibank credit cards and has more than 26 active accounts.

## FACTS

13.     In October 2012, Jessica Sigall was a member of Zipcar and rented a vehicle for personal, family or household purposes.

14.     Jessica Sigall used a credit card issued by Citibank to Michael Sigall to pay for the rental, with his permission.  Mr. Sigall used the card primarily for personal, family or household purposes.

15.     Exhibit A sets forth the terms of her membership contract and rental.  This is a standard form used by Zipcar, Inc.

16.     Paragraph 5.1 of Exhibit A makes a member responsible for any and all damage that occurs to a Zipcar while reserved under the member's account, even if the member is not at fault. "Such damages include, without limitation, the repair costs (estimated or actual) for the Zipcar vehicle and third party property, injuries to third parties, costs associated with the recovery or transportation of Zipcar vehicles, and the loss of use of Zipcar vehicles or third party

property."

17. Paragraph 5.2 limits the member's responsibility to a "damage fee".

18. Paragraph 5.3 provides for optional purchase of a "damage fee waiver."

19. Paragraph 9.5 purports to make Massachusetts law apply to the agreement.

20. A Zipcar is a "rental vehicle" as defined in McKinney's Vehicle and Traffic Law §137-a, which defines the term to mean:

> **A vehicle owned by a person engaged in the business of renting or leasing vehicles which is rented or leased without a driver to a person other than the owner and is registered in the name of such owner.**

21. A Zipcar is owned by and registered in the name of one of the Zipcar defendants. Defendants are engaged in the business of renting vehicles without drivers to Zipcar members.

22. McKinney's General Business Law § 396-z, "Rental vehicle protections," limits the damages which a rental company can charge a renter and imposes procedures for the protection of renters.  It provides, in pertinent part:

> **1. For the purposes of this section:**
>
> **(a) "Authorized driver" shall mean: (i) the person to whom the vehicle is rented if a licensed driver; (ii) such person's spouse if licensed and at least eighteen years of age; (iii) any person who operates the vehicle during an emergency situation to a medical facility; or (iv) any licensed driver expressly listed on the rental agreement as an authorized driver.**
>
> **(b) "Rental agreement" means any written agreement setting forth terms and conditions governing the authorized driver's use of a rental vehicle, as defined in section one hundred thirty-seven-a of the vehicle and traffic law, for a period not to exceed thirty continuous days.**
>
> **(c) "Rental vehicle company" means any person or organization, or any subsidiary or affiliate, including a franchisee, in the business of providing rental vehicles to the public from locations in this state. . . .**
>
> **(e) "Renter" means a person or entity that obtains the use of a private passenger vehicle from a rental vehicle company under terms of a rental agreement. . . .**
>
> **3. Subject to the provisions of subdivisions six, seven, and nine of this section, a rental vehicle company may hold an authorized driver liable for actual damage to, or loss of, a rental vehicle, provided that: (a) any claim for such damage shall be based on a physical survey and shall be made upon the return of the rental vehicle, unless returned by automation or after-hours**

which precludes such survey, in which event any claim must be made within ten days after return; and (b) any charge for repair of such damage shall be limited to actual and reasonable costs and shall be assessed and billed separately and apart from the rental agreement. For purposes of this subdivision, "returned by automation" means a return acknowledged by machine receipt and where there is no interaction with rental vehicle company personnel and "after-hours" return means a return after normal business hours and in which the keys and rental agreement are deposited in the rental vehicle company office. . . .

5.   (a) Upon return of the vehicle, termination of the rental contract, or within ten days if returned by automation or after-hours, the rental vehicle company shall furnish an incident report form and a notice, pursuant to this paragraph, of the authorized driver's obligation to execute and return to the rental vehicle company a complete and accurate incident report describing any physical and/or mechanical damage. If the vehicle is returned by automation or after-hours, such incident report form and notice shall be mailed by overnight delivery service or certified mail, return receipt requested, and another copy of such notification shall be sent by regular mail. The rental vehicle company shall retain for six years a copy of such notice and the certified mail return receipt.

(b) Upon return of the vehicle, or within seventy-two hours if the return is by automation or after-hours, the authorized driver or his or her insurer must notify the rental vehicle company that they wish to inspect the damaged vehicle. The inspection must be completed within seven days of the return date of the vehicle. If the authorized driver or his or her insurer does not request this inspection within the seventy-two hour period, the authorized driver or his or her insurer will be deemed to have waived this right.

(c) If the authorized driver declines or fails to complete and return the incident report required pursuant to paragraph (a) of this subdivision, the rental vehicle company shall, no sooner than twenty days after the mailing of notification pursuant to such paragraph (a), mail another copy of the incident report together with a letter stating that the authorized driver has declined or otherwise failed to complete and return the incident report. Such mailing shall be by overnight delivery service or certified mail, return receipt requested, and another copy of such notification by regular mail, with proof of mailing by production of a certificate of mailing from the post office. Within seventy-two hours of return of the vehicle, the authorized driver or his or her insurer must notify the rental vehicle company that he or she wishes to inspect the damaged vehicle. The inspection must be completed within seven days of the return date of the vehicle. If the authorized driver or his or her insurer does not request this inspection within the seventy-two hour period, the authorized driver or his or her insurer will be deemed to have waived this right. If the rental vehicle company determines the damaged vehicle to be a total loss and subject to salvage, such seventy-two hour period for notification or waiver of the wish to inspect the damaged vehicle shall not apply, and the authorized driver or his or her insurer shall have ten business days from the authorized driver's receipt of notification from the rental vehicle company pursuant to paragraph (a) of this subdivision to inspect the damaged vehicle, unless the rental vehicle company

5

agrees to provide access to such damaged vehicle beyond the ten business days provided herein. Within the limits provided in this paragraph, the rental vehicle company shall identify the repairer of, and provide access to, the damaged vehicle, in order to verify the nature and extent of damages, repairs and repair costs, and/or repair estimates.

(d) All notices shall be mailed to the authorized driver's address as stated on his or her license, or other address as designated by him or her.

(e) The authorized driver shall complete and return the incident report within ten days of the receipt of the notice.

(f) The notice required by this subdivision shall be in at least twelve point bold face type and shall contain the statement: "Failure to completely and accurately fill out and return an incident report within ten days of receipt of this notice may make the authorized driver liable for damages sustained to the rental vehicle. Except where the damaged vehicle is determined to be a total loss and subject to salvage, the authorized driver or his or her insurer has seventy-two hours from the return of the vehicle to notify the rental vehicle company that he or she wishes to inspect the damaged vehicle. The inspection must be completed within seven business days of the return date of the vehicle. If the authorized driver or his or her insurer does not request this inspection within the seventy-two hour period, the authorized driver or his or her insurer will be deemed to have waived this right. If the rental vehicle company determines the damaged vehicle to be a total loss and subject to salvage, such seventy-two hour period for notification or waiver of the wish to inspect the damaged vehicle shall not apply, and such right to inspect the damaged vehicle shall expire ten business days from the authorized driver's receipt of this notice from the rental vehicle company at the return of the vehicle or receipt of the first mailing of this notice in the event of return of the vehicle by automation or after hours. Upon request of the authorized driver or his or her insurer, we will provide a copy of our estimate of the costs of repairing the damaged motor vehicle."

(g) For purposes of this subdivision, an "incident report" shall be defined as a motor vehicle accident report pursuant to section six hundred five of the vehicle and traffic law or any similar appropriate form furnished by the rental vehicle company.

(h) Provided, however, if the authorized driver is physically incapable of completing the report, the requirements of this subdivision shall lapse until after he or she is able to complete the report and is notified that he or she must complete and return the report as required by paragraph (b) of this subdivision.

(i) Provided, further, twenty days prior to commencing an action against the authorized driver, the rental vehicle company must prove the authorized driver had an additional opportunity to provide the incident report by providing a second notice along with another incident report by certified mail, return receipt requested, and another copy of such notice and report by regular mail, with proof of mailing by production of a certificate of mailing; and if the authorized driver provides the rental vehicle company with a

6

completed incident report within fifteen days of the receipt of the notice, the provisions of this subdivision shall be deemed satisfied.

6.     (a) A rental vehicle company may hold an authorized driver liable to the extent permitted under this chapter for physical or mechanical damage to the rental vehicle that occurs during the time the rental vehicle is under the rental agreement; provided, however, that a renter shall not be liable for mechanical damage unrelated to an accident, nor for any normal wear and tear or other mechanical damage that could reasonably be expected from normal use of the vehicle, except in instances where abuse or neglect by the driver is shown. For the purposes of this subdivision, "actual and reasonable costs" shall mean the repair price reduced by all discounts paid by the rental vehicle company to the repairer of the vehicle, including costs for towing, storage, and impound fees.

(b) The total liability of an authorized driver under paragraph (a) of this subdivision for damage to a motor vehicle shall not exceed the lesser of:

(i) the actual and reasonable costs that the rental vehicle company incurred to repair the motor vehicle or that the rental vehicle company would have incurred if the motor vehicle had been repaired, which shall reflect any discounts, price reductions, or adjustments available to the rental vehicle company; or

(ii) the fair market value of the motor vehicle immediately before the damage occurred, as determined in the applicable market for the retail sale of the motor vehicle, less any net disposal proceeds.

(c) The total liability of an authorized driver under paragraph (a) of this subdivision for loss of a motor vehicle shall not exceed reasonable costs incurred by the rental vehicle company for the loss due to theft of the rental vehicle up to its fair market value, as determined by the applicable market for the retail sale of that vehicle if it is established that an authorized driver failed to exercise reasonable care or that an authorized driver committed, or aided or abetted in the commission of, the theft of the rental motor vehicle.

(d) Damages incurred by rental vehicle companies for the loss of use of a rental vehicle and related administrative fees shall not be recovered from authorized drivers.

(e) A rental vehicle company shall not hold an authorized driver liable for any amounts that the rental vehicle company recovers from any other party.

(f) A rental vehicle company shall not collect or attempt to collect the amount described in paragraph (b) of this subdivision unless the rental vehicle company:

(i) obtains an estimate from a repair company or an appraiser in the business of providing such appraisals on the cost of repairing the motor vehicle;

(ii) provides a copy of the estimate and photographic evidence upon

7

request to the authorized driver who may be liable under paragraph (a) of this subdivision, or the insurer of the authorized driver; and

(iii) submits a copy of the estimate with any claim to collect the amount described in paragraph (b) of this subdivision.

(g) A claim against an authorized driver resulting from damage or loss to a rental vehicle shall be reasonable and rationally related to the actual loss incurred. A rental vehicle company shall mitigate damages where possible and shall not assert or collect any claim for physical damage which exceeds the amount authorized under paragraph (b) of this subdivision.

(h) If insurance coverage exists under the authorized driver's applicable insurance policy, the authorized driver may require that the rental vehicle company submit any claims to the authorized driver's insurance carrier. Upon the request of an authorized driver, the rental vehicle company shall submit any claims to the authorized driver's insurance carrier and shall not make any written or oral representations to the contrary, nor shall it make any written or oral representations that it will not negotiate with the authorized driver's insurance carrier.

7.    (a) No rental vehicle company shall require any security, deposit, or charge for damage in any form, by credit card or otherwise, during the term of the rental agreement or pending resolution of any dispute.

(b) No rental vehicle company shall require a deposit or an advance charge against the credit card of an authorized driver, in any form, for damages to a rental vehicle which is in the authorized driver's possession or control.

(c) No rental vehicle company shall require any payment to the rental vehicle company, upon the authorized driver's return of the vehicle in a damaged condition, until after the cost of the damage to the vehicle and liability therefor is agreed to between the rental vehicle company and the authorized driver or is determined pursuant to law; provided, however, that a rental vehicle company is not precluded from presenting a claim to the authorized driver pursuant to other provisions of this section.

(d) Causes of action concerning the existence of, liability for, and extent and cost of damage to the vehicle shall, where appropriate, be commenced by a rental vehicle company in a commercial claims part in accordance with the limitations and jurisdiction of the appropriate court act. . . .

9.    No rental vehicle company shall hold any authorized driver liable for any damage to, or loss of, a rental vehicle, as provided by this section, unless the rental vehicle company prominently discloses, on the rental agreement, in at least ten point bold face display, the nature and extent of such liability and such driver's rights and responsibilities under this section. . . .

11.   Any clause or provision of a rental agreement inconsistent with the provisions of this section shall be deemed void as against public policy.

23.   The Zipcar rented by Jessica Sigall was damaged by an unknown person or

8

vehicle, damaging a mirror.

24.     On or about November 22, 2012, Zipcar debited Michael Sigall's credit card for $486.34, representing a "damage fee" pursuant to Exhibit A.

25.     Plaintiffs had not agreed to such debit after the damage occurred, and no court had determined plaintiffs to be liable.

26.     Nothing in Exhibit A states that damage will be charged to a credit card.

27.     By submitting such debit to the card issuer, defendants represented to the card issuer that it was authorized.  It was not authorized.

28.     Defendants did not comply with any of the procedures set forth in McKinney's General Business Law § 396-z before imposing such liability.

29.     It is the policy and practice of defendants to not comply with any of the procedures set forth in McKinney's General Business Law § 396-z before imposing damage liability on a member.

30.     In particular:

    a.     Defendants do not base damage claims on a physical survey within ten days after return.

    b.     Defendants do not provide an incident report form and a notice of the authorized driver's obligation to execute and return to the rental vehicle company a complete and accurate incident report describing any physical and/or mechanical damage.

    c.     Defendants do not afford an opportunity to inspect the damaged vehicle.

    d.     Defendants do not identify the repairer of, and provide access to, the damaged vehicle, in order to verify the nature and extent of damages, repairs and repair costs, and/or repair estimates.

    e.     Defendants' contract provides for liability in excess of "actual and reasonable costs" of repair, including loss of use.

f.    Defendants collect and attempt to collect damages from members without obtaining an estimate from a repair company or an appraiser, providing a copy of the estimate and photographic evidence upon request, and submitting a copy of the estimate with any claim to collect the damages claimed.

g.    Defendants unilaterally charge members' credit cards for damage prior to resolution of any dispute by agreement with the member or determination pursuant to law.

31.    None of the procedures specified in McKinney's General Business Law § 396-z were followed in plaintiffs' case.

32.    It is the policy and practice of defendants to charge members' credit cards and debit cards for damage, without authority to do so.

33.    Plaintiffs had Worldwide Auto Rental Insurance Coverage as part of their credit card agreement with Citibank.  The coverage involved issuance of an insurance policy by Federal Insurance Company.

34.    Plaintiffs submitted a claim under such policy.

35.    Federal Insurance Company's agent Sedgwick CMS requested documentation from defendants of the alleged damage (Exhibit B).   Federal Insurance Company was entitled to such documentation under McKinney's General Business Law § 396-z.

36.    On information and belief, defendants failed to provide documentation.

37.    The claim has therefore not been paid.

38.    Plaintiffs also disputed defendants' $486.34 charge with Citibank pursuant to the Fair Credit Billing provisions of the Truth in Lending Act, 15 U.S.C. §1666.  (Exhibit C)

39.    Citibank issued a provisional credit but then reversed the credit, stating that "We will be unable to assist you until the claim has been closed from the Visa Benefits Center." (Exhibit D)

40.     Such disposition was improper, as the charge had not been agreed to by plaintiffs and was contrary to law.

## CLASS ALLEGATIONS

41.     Plaintiffs bring Counts I-II of this action on behalf of a class, pursuant to Fed. R. Civ.P. 23(a), (b)(2) (insofar as declaratory and injunctive relief is sought), and (b)(3) (insofar as monetary relief is sought).

42.     Plaintiffs bring this claim on behalf of two classes.

43.     Class A, relating to damage claims, consists of (a) all persons  (b) charged for vehicle damage to cars rented pursuant to Zipcar memberships (c) where the membership address is in New York State or the Zipcar was assigned to a New York location, (d) at any time during a period beginning six years prior to filing of suit.

44.     Class B, relating to declaratory and injunctive relief, consists of (a) all persons (b) who have or will have Zipcar memberships (c) where the membership address is in New York State or the Zipcar is assigned to a New York location.

45.     Each class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of each  class.  The Zipcar, Inc. 10-K indicates quarterly income of at least $7-10 million from the New York area (original pages 58-59).  (The figures combine four metropolitan areas; although New York is the largest, plaintiffs assumed that 25%  came from each city.)

46.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

> i.      Whether the damage liability provisions of the Zipcar contract violate New York law, specifically  McKinney's General Business Law § 396-z;
>
> ii.     Whether Zipcar's attempt to contract around New York law by specifying application of Massachusetts law is void;

    iii.    Whether Zipcar should be enjoined from failing to comply with New York law in the future;

    iv.    Whether Zipcar should be required to refund or pay damages equal to all amounts obtained from class members for damages other than in compliance with New York law.

47.    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiffs nor plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

48.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

49.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

## COUNT I – DECLARATORY AND INJUNCTIVE RELIEF REGARDING CONTRACTS

50.    Plaintiffs incorporate paragraphs 1-49.

51.    This claim is against Zipcar, Inc., and Zipcar New York, Inc.

52.    There is a dispute between plaintiffs and defendants concerning defendants' $486.34 charge for damages and similar charges imposed or to be imposed on class members.

53.    Plaintiffs contend that the charge is unlawful because it is contrary to McKinney's General Business Law § 396-z.

54.    Defendants contend that the charge is lawful and debited Mr. Sigall's credit card for it.

55.    A declaratory judgment will resolve such controversy.

56.    Injunctive relief is necessary to prevent further imposition of unlawful charges.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and in favor of the class members for:

i.   A declaration that defendants are obligated to comply with McKinney's General Business Law § 396-z and that any charges for damage imposed without strict compliance with McKinney's General Business Law § 396-z are void;

ii.   An injunction requiring defendants to comply with McKinney's General Business Law § 396-z.

iii.   Restitution or disgorgement of all amounts obtained on account of damages without compliance with McKinney's General Business Law § 396-z.

iv.   Restitution or disgorgement of all amounts obtained on account of damage waivers, since there was no liability to waive if defendants failed to comply with McKinney's General Business Law § 396-z.

v.   Costs;

vi.   Such other or further relief as the Court deems proper.

## COUNT II – GENERAL BUSINESS LAW § 349

57.   Plaintiffs incorporate paragraphs 1-49.

58.   This claim is against Zipcar, Inc., and Zipcar New York, Inc.

59.   Defendants engaged in deceptive acts and practices, in violation of General Business Law § 349, by:

a.   Representing to consumers that they are liable for damages when they are not liable by virtue of McKinney's General Business Law § 396-z.

b.   Collecting amounts for damage liability imposed without compliance with McKinney's General Business Law § 396-z, by charging credit and debit cards for such amounts;

c.   Representing to the issuers of credit and debit cards that charges submitted are authorized, when they are not authorized.

d.   Selling damage waivers to "waive" liability that was or could be imposed without compliance with McKinney's General Business Law § 396-z.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and in favor of the class members for:

i.   A declaration that defendants are obligated to comply with McKinney's General Business Law § 396-z and that any charges for damage imposed without strict compliance with McKinney's General Business Law § 396-z are void;

ii.   An injunction requiring defendants to comply with McKinney's General Business Law § 396-z.

iii.   Damages equal to all amounts obtained on account of damages without compliance with McKinney's General Business Law §396-z.

iv.   Damages equal to all amounts obtained on account of damage waivers;

v.   Damages of $50 to any class member entitled to damages of less than that amount.

vi.   Attorney's fees, litigation expenses and costs;

vii.   Such other or further relief as the Court deems proper.

## COUNT III – COMMON LAW FRAUD

60.   Plaintiffs incorporate paragraphs 1-49.

61.   This claim is against Zipcar, Inc., and Zipcar New York, Inc.

62.   Defendants committed fraud by:

a.   Representing to consumers that they are liable for damages when they are

not liable by virtue of McKinney's General Business Law § 396-z.

b.  Collecting amounts for damage liability imposed without compliance with McKinney's General Business Law § 396-z, by charging credit and debit cards for such amounts;

c.  Representing to the issuers of credit and debit cards that charges submitted are authorized, when they are not authorized.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and in favor of the class members for:

i.   Damages equal to all amounts obtained on account of damages without compliance with McKinney's General Business Law §396-z.

ii.  Damages equal to all amounts obtained on account of damage waivers;

iii. Costs;

iv.  Such other or further relief as the Court deems proper.

## COUNT IV – TRUTH IN LENDING ACT

63.  Plaintiffs incorporate paragraphs 1-49.

64.  This claim is by Mr. Sigall against Citibank.

65.  Citibank violated 15 U.S.C. §1666 by failing to properly investigate and honor plaintiff's billing dispute.

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against Citibank for:

i.   $5,000 statutory damages (15 U.S.C. §1640);

ii.  Actual damages;

iii. Attorney's fees, litigation expenses and costs;

iv.  Such other or further relief as the Court deems proper.

_____
Lawrence Katz


Lawrence Katz
LAW OFFICES OF LAWRENCE KATZ
445 Central Avenue, Suite 201
Cedarhurst, NY 11516
516-374-2118
Fax: 516-706-2404
Email: lkatz@lawkatz.com


Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
312-739-4200
Fax: 312-419-0379
Email: courtecl@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Lawrence Katz

T:\28042\Pleading\Complaint_Pleading.WPD

## <u>NOTICE OF ASSIGNMENT</u>

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

_____
Lawrence Katz

# EXHIBIT A

REDACTED

zipcar
- Skip to Content
- Skip to Navigation
- Return to Homepage

- **hi, Jessica! (sign out)**
- reserve a car
- british english
- canadian english
- for everybody

- for business

- for universities
- join!
- is zipcar for me?
- how it works
- rates & plans
- **zipcar membership contract**

**Member:** Jessica Sigall
**Member Since:** Jul 21st, 2005
**Contract Last Revised:** December 2012

This Contract is a vehicle-sharing service subscription contract between Zipcar and the Member. All Members are required to accept and comply with the terms and conditions set forth herein. By accepting the terms and conditions of this Contract and using Zipcar's services you accept and agree to comply with the terms and conditions of this Contract, as it may be amended from time to time as provided herein.

IF YOU DO NOT ACCEPT ALL OF THE TERMS AND CONDITIONS OF THIS CONTRACT, THEN YOU ARE NOT AUTHORIZED TO USE ANY OF ZIPCAR'S VEHICLES OR SERVICES.

If you have any questions regarding this Contract, please contact us via email at info@zipcar.com or by telephone at **1-866-4ZIPCAR.**

Zipcar reserves the right to change the terms of this Contract, including the associated Schedules, from time to time. We will give notice of changes to Members in a timely manner. Unless we designate a different date for effectiveness, such changes will be effective when notice is given to Members and notice will be considered given when such notice is indicated and accessible from the first page accessed after the Member log-on, when it is provided by email to the Member's address on file with Zipcar, or it is provided via our newsletter. If a Member requests (via an email to us at info@zipcar.com), we will email that Member a notice of the changes. You agree that the amended terms and conditions of this Contract shall be effective and binding on you upon the effective date indicated in such notice or on such other the date as Zipcar may designate in its notice.

Certain provisions of this Contract and the Rules related to your use of Zipcar vehicles and services may vary based upon the jurisdiction in which you reserve or use a Zipcar vehicle. For example, the insurance Zipcar provides may vary based upon the country (or, if applicable, by province or state) in which you are utilizing the Zipcar vehicle and certain different or additional fees and policies may apply. The Contracts applicable to all jurisdictions in which Zipcar vehicles may be reserved are available through the Zipcar websites.

## 1.
## Definitions

In this Contract, the following definitions apply:

**a.**
"Member" or "you": The person registered as the First Member and, unless specifically indicated otherwise in this Contract, each Associate Member.

**b.**
"First Member": The person designated to receive and pay all fees, charges and other costs associated with membership, including application fees, membership fees, driving charges and other costs or fees as indicated in the Rules and Schedules described below.

**c.**
"Associate Member": Any approved Zipcar Member who is authorized by the First Member to use Zipcar's service under the terms of this Contract. Additional driving record/insurance verification, application and/or membership fees may apply for Associate Members.

**d.**
"Contract": This Membership Contract and its Schedules, whether made available in print or electronically through Zipcar's websites. The Schedules are an integral part of this Contract.

**e.**
"Rules": All the rules, guidelines or policies of Zipcar related to a Member's use of the Zipcar service, whether set forth in this Contract, appearing elsewhere on Zipcar's websites or otherwise issued from time to time by Zipcar, including specifically and without limitation those set forth in Schedule 1: Rules for Vehicle Use.

**f.**

"Schedules": All the schedules, rate plans and polices referenced in or incorporated into this Contract.

## 2.
## Basic Terms of Use of the Zipcar Service

**2.1**
This Contract is a vehicle-sharing service subscription contract offered by Zipcar, Inc. or one of its subsidiaries (which include Zipcar Canada Inc., Zipcar (UK) Limited, Catalunya Carsharing S.A. and Zipcar Austria GmbH ("Zipcar", "us", or "we")), but does not in itself confer any right to use any Zipcar vehicles. A Member may only use Zipcar's vehicles, to the extent available, in accordance with the terms of this Contract and subject to paying all applicable fees and charges.

**2.2**
Zipcar is the owner of any item it provides to the Member or puts at the Member's disposal during the term of this Contract, including specifically and without limitation, all Zipcar vehicles, mobile and web based applications and the Member's access card ("Zipcard"). The Member's use of and rights in relation to any Zipcar vehicle or item provided by Zipcar under this Contract are limited to those rights of use stated in this Contract.

## 3.
## Eligibility

**3.1**
To be eligible for our service, the Member must:

- Be at least 21 years of age; provided, however, that if the Member is a student of a college or university that has separately contracted with Zipcar for services, such Member must be at least 18 years of age;

- Hold a valid driver's license that authorizes the Member to drive in the jurisdictions in which the Member will use Zipcar vehicles and have a driving history that meets Zipcar's then current eligibility requirements; and

- Accurately, truthfully and fully complete the application process with Zipcar and deliver all information and documents requested in the application or otherwise.

**3.2**
Satisfying the foregoing criteria does not automatically give an applicant the right to become a Zipcar Member. Acceptance of the applicant's membership is subject to approval by Zipcar in its sole discretion and, without limiting the foregoing, membership may be denied based upon additional criteria established from time to time by Zipcar and/or its insurance providers. In addition, even if approved for membership, a Member may be restricted from driving certain Zipcar vehicles based upon the Member's driving history and experience or the membership/driving plan selected by the Member.

## 4.
## Fees and Responsibilities of the Member

**4.1**

The Member promises to pay Zipcar all applicable driving record/insurance verification, application and membership fees associated with the Member's driving/membership plan. Driving record/insurance verification and application fees (if applicable) are not refundable, regardless of whether or not the application is accepted by Zipcar or a Member's membership terminates and new verification/application fees may be payable if a new membership application is resubmitted more than thirty (30) days after a Member's account with Zipcar is closed. If your driving/membership plan includes an annual or monthly fee, your initial membership fee will be charged to you within five days of membership approval, regardless of whether you activate your Zipcard, and will only be refundable if you terminate your membership within the first thirty (30) days following membership approval. Certain restrictions apply. If at any time you wish to cancel your Zipcar membership, call us at 1-866-4ZIPCAR.

Certain membership plans (including monthly plans, Extra Value Plans ("EVP") or Wheel Deal Plans) renew every month. Following approval of the Member by Zipcar for a monthly renewing plan, the Member's credit or debit card will be automatically charged every month, even if the Member's Zipcard is not activated. Monthly payments associated with such plans are non-refundable and, for EVP and Wheel Deal Plans, the driving credit associated with the monthly fee expires at the end of each month if not used and may not be carried into future months. EVP and Wheel Deal plans are optional and may be changed/opted-out of at any time from the Member's account page or by calling 1-866-4ZIPCAR.

**4.2**
The Member is required to pay all fees and costs incurred (including fees and costs incurred by Associate Members) when due, including, without limitation, application fees, driving record/insurance verification fees, membership fees (which are automatically charged when due), driving charges (including but not limited to mileage overage and surcharge and/or toll fees), sales and other taxes and levies, and other costs and fees as provided in the Rules and Schedules and the Member's driving/membership plan. Members are billed for amounts due via credit or debit card or other means as established by Zipcar. Any Member account which is past due will be suspended; however, any reservations booked in advance shall still be charged to the Member if not timely cancelled by the Member. If payment of any amount due is rejected by the credit or debit card provided by the Member, membership, and the use of Zipcar's services, may be suspended. Members are responsible for providing and maintaining current credit or debit card information on file with Zipcar. Ongoing issues with credit or debit card billings may result in termination of membership. Under no circumstances will Zipcar be responsible for any overdraft or other fees charged by a Member's credit card company or bank. For past due accounts, Zipcar may also change when payment is due and/or terminate the Member's account. In addition, Zipcar may utilize third parties to collect amounts owed to Zipcar by a Member and the Member will also be responsible for any collection or similar fees associated with these collection activities.

**4.3**
Members are responsible for providing and maintaining current email, mobile phone, preferred search address, mailing address and other account information. Telephone calls, email correspondence and social media communications with Zipcar may be recorded or monitored. By using these communication methods you are consenting to the recording or monitoring of your calls, emails and social media communications.

**4.4**
By applying for membership, each applicant authorizes Zipcar to obtain his/her driving records from the jurisdiction in which the applicant is licensed. Members who do not have a driver's

license from the jurisdiction in which they reside must comply with the licensing requirements of such jurisdiction for driving in that jurisdiction. In addition, Zipcar may at any time require Members to demonstrate compliance with the licensing laws of their jurisdiction of residence and/or impose further policies regarding the obligation to be licensed in their jurisdiction of residence. Zipcar reserves the right to request additional information, such as a copy of a passport or proof of address at any time. Because driving a Zipcar vehicle requires maintaining a good driving record, Zipcar may, from time to time, check Members' driving records and reserves the right, at its sole discretion, to suspend or terminate the Membership of any Member who does not meet Zipcar's eligibility requirements. If the Member's license is suspended or revoked or becomes invalid, if the Member has any further endorsements or accidents on their driving record or if the Member is convicted of or receives a citation for driving under the influence of alcohol or drugs, dangerous or reckless driving or exceeding the relevant speed limit, the Member agrees to report such suspension, revocation, changes, conviction or citation to Zipcar promptly. Failure to notify Zipcar of any such events may lead to the Member not being covered by Zipcar's insurance policy when driving a Zipcar vehicle and/or termination of membership.

## 5.
## Damages; Damage Fee; Damage Fee Waivers

### 5.1
*Damages Generally:* A Member is responsible for any and all damage that occurs to a Zipcar vehicle while in the Member's possession or control (including the entire time the vehicle is reserved under the Member's account), *even if damage is weather-related, caused by a third party or arises from similar causes,* and is responsible for the full value of any damages or injuries caused to third parties or their property. Such damages include, without limitation, the repair costs (estimated or actual) for the Zipcar vehicle and third party property, injuries to third parties, costs associated with the recovery or transportation of Zipcar vehicles, and the loss of use of Zipcar vehicles or third party property. However, as described in Section 6 below, Zipcar provides insurance that, in general, covers most damages arising from a Member's use of Zipcar vehicles and the Member's liability for damages will generally be limited to the Damage Fee described in Section 5.2 below. *If, however, a Member fails to abide by the terms and conditions of this Contract, the insurance coverage Zipcar provides may not apply, which may make the Member responsible for the full cost of any accident or incident and any damage arising from such accident or incident.* For example, a Member permitting or enabling a non-Member to drive a Zipcar vehicle will be responsible for all damage and costs incurred as a result of the non-Member's use.

### 5.2
*Damage Fee:* Assuming a Member's compliance with all of the terms and conditions of this Contract, the Member's responsibility for the damages described in Section 5.1 shall be limited to the damage fee (the "Damage Fee") associated with the Member's driving/membership plan and/or the type of Zipcar vehicle used by the Member. Members will be responsible for up to the full amount of the Damage Fee for actual, estimated or projected expenses, whether or not an actual claim is made or processed, unless the Member has purchased a Damage Fee Waiver.

### 5.3
*Damage Fee Waivers:* Zipcar offers for purchase, at the option of the Member, Damage Fee Waivers or DFWs.

For an additional charge, eligible Zipcar Members (generally Members age 21 or over who have not had an accident in Zipcar vehicle involving property damage or any third party

during the past 12 months, subject to applicable limitations and restrictions) have the option to purchase a DFW to cover the Member's financial responsibility – the Damage Fee – for damages arising from the Members use of Zipcar vehicles. Before purchasing a DFW, you should check to see if you already have rental vehicle collision coverage through your credit card or personal automobile insurance policy that would apply to and cover the Damage Fee. You have no obligation to purchase a DFW. The purchase of a DFW is optional and may be declined. A DFW is not insurance and does not provide or alter insurance coverage.

By purchasing an optional DFW, a Member can reduce or eliminate the applicable Damage Fee. If a Member purchases a DFW, Zipcar will waive that Member's responsibility for all or a portion of the applicable Damage Fee, based upon the buy down amount (all or partial) of the DFW purchased. A DFW applies only to the specific Member purchasing the DFW and does not apply to Associate Members. A DFW may also be limited to specific types or classes of Zipcar vehicles. Before reserving a Zipcar vehicle, Members should confirm whether any previously purchased DFW applies to the Zipcar vehicle being used. The purchase of a DFW is non-refundable.

The cost of the DFW will vary based upon, among other things, the term/type of DFW purchased (annual, monthly or per reservation), Damage Fee reduction amount (all or partial), membership location, driving experience and similar factors. For annual or monthly waivers, the DFW is limited to the period stated at the time of purchase; after which, if you elect not to renew or repurchase or cancel a DFW, you will be once again responsible for the full Damage Fee. A per reservation DFW applies only to the specific reservation for which it is purchased and is not transferable in any manner.

The elimination or reduction of liability for the Damage Fee through the purchase of a DFW will not apply, and previously purchased DFWs may be terminated by Zipcar, if you (1) use the vehicle in violation of this Contract, including if you permit a non-Member to driver, engage in any prohibited use of a Zipcar vehicle or, purposely or through negligence (e.g., by putting the wrong type of fuel in a vehicle), damage a Zipcar vehicle or third party property; (2) have had your membership suspended or terminated by Zipcar and/or have two at fault incidents in a Zipcar vehicle involving property damage or any third party; (3) fail to close and lock all windows, doors and trunk and the vehicle is stolen, damaged or vandalized; (4) fail to notify Zipcar immediately after an incident or loss; or (5) fail to pay any other amount due under this Contract.

Annual and monthly DFWs typically renew automatically. A Member's credit card will be automatically charged monthly or annually, depending upon the DFW selected, when due. DFWs are optional. Monthly DFWs may be opted-out of at any time from a Member's account page or by calling 1-866-4ZIPCAR. In order to change the type of DFW purchased (for example, to change from a monthly DFW to an annual DFW), Members must call 1-866-4ZIPCAR.

**6.**
**Insurance**

    **6.1**
Any active Zipcar Member in good standing who is authorized to operate a Zipcar vehicle under this Contract is, subject to the Member fulfilling their obligations as set out in this Contract, covered by our automobile liability insurance policy, which provides coverage for third party bodily injuries and for property damage costs relating to an accident for which the Member may

be legally liable. The amount of such coverage varies depending upon the age of the Member. For Members 21 years of age or older, the coverage limit is a combined single limit of $300,000 per accident. For Members under 21 years of age, coverage is provided up to the minimum financial responsibility limits required by law in the jurisdiction in which the accident occurs or the claim is adjudicated. Minimum financial responsibility limits vary by jurisdiction. Additional information may be found here.

Where required by law, we provide Personal Injury Protection (PIP), or "no-fault" coverage, to the minimum level required by the jurisdiction in which the accident occurs or the claim is adjudicated, for injuries you may suffer in an accident. Members may also use their own health care coverage in case of injury and any personal injury coverage that the Member has available will be primary over any PIP or no fault coverage Zipcar may provide where allowed by law. **To the extent permitted by law, Zipcar and each Member hereby waives and rejects the inclusion of uninsured motorist, underinsured motorist, supplementary no fault, or any other optional coverage and Zipcar is hereby authorized to sign any forms or acknowledgments on behalf of each Member rejecting such coverage.** If any such protection is imposed by operation of law, then the limits of such protection will be the minimum required for primary liability protection by the law of the jurisdiction in which the accident occurs.

No coverage is provided for any use of a Zipcar vehicle by any unauthorized driver as defined by the terms of this Contract; provided, however, if such coverage is mandated by law, then the limits of such protection will be the minimum financial responsibility limits required by law in the jurisdiction where the accident occurs or the claim is adjudicated.

The insurance provided by Zipcar does not relieve Members of their obligations with respect to the Damage Fee described in Section 5 of this Contract.

# 7.
# Term and Termination

**7.1**
This Contract shall commence upon the acceptance by Zipcar of the Member's completed membership application and the payment by the Member of any applicable fees. The term of this Contract shall continue until such time as membership is canceled in accordance with this Section 7. A Member may terminate membership and all associate memberships upon one day prior notice by calling us at 1-866-4ZIPCAR. No monthly, annual, application, driving records/insurance verification or similar fee will be refunded in the event of termination by the Member, except as specifically provided in this Contract. In addition to the termination provisions set forth in Section 7.2 below, Zipcar may terminate this Contract at any time upon no less than thirty (30) days' notice to the Member, in which event Zipcar will, if applicable, refund a prorated portion of the Member's annual membership fee for the year of termination. With respect to any termination or cancellation of this Contract, the Member shall remain responsible for any fees, costs or expenses incurred prior to termination of this Contract.

**7.2**
Zipcar may also, upon notice to the Member or any Associate Member, immediately terminate this Contract if the Member or any Associate Member (a) fails to pay any sum due under this Contract, (b) fails to comply with any term or condition specified in the Contract or any Rules, (c) is involved in an incident with a Zipcar vehicle that, in Zipcar's reasonable discretion, renders the Member or Associate Member ineligible or inappropriate for continued membership, (d) engages in any activities or conduct that Zipcar, in its reasonable discretion, determines to be inappropriate, negligent, offensive, abusive or otherwise unacceptable; or (e) is not paying the

Member's debts as such debts generally become due, becomes insolvent, files or has filed against the Member a petition (or other document) under any bankruptcy or insolvency law or similar law that is unresolved within sixty (60) days of the filing of such petition (or document), proposes any dissolution, liquidation, composition, financial reorganization or recapitalization with creditors, makes a general assignment or trust mortgage for the benefit of creditors, or if a receiver, trustee, custodian or similar agent is appointed or takes possession of any of the Member's property or business. No membership or other fees will be refunded in the event of termination pursuant to this Section 7.2.

**7.3**
Upon termination, all of the Member's and Associate Member's rights to use Zipcar's services and vehicles shall immediately terminate. The Member agrees to return immediately to Zipcar any vehicle or any other property of Zipcar that the Member has in the Member's possession, including, if requested, all Zipcards. Additionally, the Member shall be responsible for and agrees to pay any legal fees, court costs or expenses associated with enforcing the terms of this Contract, whether upon termination or otherwise (including, without limitation, any costs relating to recovering any of the foregoing property or any amounts due and owing to Zipcar).

**8.**
**Limitations of Liability**
**UNDER NO CIRCUMSTANCES WILL ZIPCAR BE LIABLE TO ANY MEMBER OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFIT, REVENUE, GOODWILL, BUSINESS OPPORTUNITY OR ANTICIPATED SAVINGS, ARISING FROM OR RELATED TO THIS CONTRACT OR USE OF THE ZIPCAR SERVICES.** Without limiting the foregoing, Zipcar shall have no liability for any loss of, or damage to, any goods in or on the vehicle or in or on any third party vehicle, any loss, damage, injury or death in relation to any Member or any third party arising from the use of a Zipcar vehicle, loss or damage incurred by the Member as a result of any claims made by a third party, or loss or damage incurred by the Member arising from or in relation to either (i) the reservation, non-availability, supply, operation or use of a Zipcar vehicle or (ii) any vehicle accessories, whether supplied by Zipcar or by a Member (for example, luggage racks, bicycle racks, baby seats and the like; the Member is responsible for the safe installation of such accessories and must check the condition of such accessories before each use), unless in each case such loss or damage is incurred due to our negligence or failure to carry out our responsibility.

**9.**
**Miscellaneous Provisions**
**9.1**
By applying for membership and becoming a Zipcar Member, the Member represents and warrants to Zipcar that the Member has received all explanations as the Member may have reasonably requested concerning the content of this Contract, including all Schedules, and that the Member has carefully reviewed and understands the Member's commitments and obligations hereunder. The Member also represents that the Member has reviewed and understands the Zipcar Privacy Policy and acknowledges that any information shared by, or collected from or about, the Member may be used by Zipcar in accordance with the terms of the Privacy Policy as it may be amended from time to time.

**9.2**
The rights granted to the Member or Associate Members under this Contract are not assignable or transferable, in whole or in part. Any attempt to transfer this Contract without the written

consent of Zipcar shall be void and of no force and effect. Zipcar may assign this Contract to an affiliate or to another entity in connection with a corporate transaction or otherwise.

**9.3**
No delay or omission by Zipcar to exercise any right or power occurring upon any noncompliance or default by the Member with respect to any of the terms of this Contract shall impair any such right or power or be construed to be a waiver thereof. Any waiver by Zipcar of any covenant, condition, or agreement to be performed by the Member shall not be deemed to be a waiver of any prior or subsequent breach of the same, or of any other covenant, condition, or agreement hereunder. Unless stated otherwise, all remedies provided for in this Contract shall be cumulative and in addition to and not in lieu of any other remedies available to either party at law, in equity, or otherwise.

**9.4**
If any term, provision, covenant or condition of this Contract is held invalid or unenforceable for any reason, the remainder of the provisions will continue in full force and effect as if this Contract had been executed with the invalid portion eliminated. The parties further agree to substitute for the invalid provision a valid provision that most closely approximates the intent and economic effect of the invalid provision.

**9.5**
This Contract is governed by the laws in force in the Commonwealth of Massachusetts and shall be interpreted according to the internal laws of such Commonwealth, without reference to its conflicts of laws or choice of law rules. All disputes hereunder shall be resolved solely in the applicable state or federal courts of Massachusetts. The parties hereby consent to the exclusive jurisdiction of such courts, agree to accept service of process by mail, and waive any jurisdictional or venue defenses otherwise available.

**9.6**
Any notices or communication required or permitted to be given to the Member shall be in writing and shall be sufficiently given if delivered by email or mailed to the Member at the email or postage address provided to Zipcar in the Member's completed application or as updated by the Member and on file with Zipcar. Any notices or communication required or permitted to be given to Zipcar shall be in writing and shall be sufficiently given if delivered via email or mailed as follows:

Zipcar, Inc.
25 First Street
Cambridge, MA 02141
Email Address: info@zipcar.com

Any notice delivered via email shall be deemed to have been received on the first business day after which it was sent, unless the sending party is notified that the email address is invalid. Any notice sent by letter shall be deemed to have been received on the fourth business day after it was posted.

**The schedules constitute an integral part of this Contract:**
Schedule 1: Rules of Vehicle Use
Schedule 2: Fee Policy
Schedule 3: Membership and Driving Rates
Schedule 4: Services for Members with Disabilities

- ◄ Visit The Mobile Site
- About |
- Help |
- Press |
- Zipcar's Impact |
- Investor Relations |
- Jobs |
- Refer A Friend |
- Gift Certificates |
- Contact
  |
- 1-866-4ZIPCAR (1-866-494-7227)
- Products & Services

- Business |
- University |
- FastFleet |
- Zipvan
- Member Contract

- Privacy Policy

- Copyright © 2013 Zipcar, Inc. All rights reserved.
  Zipcar is the world's largest car sharing and car club service. It is an alternative to traditional car rental and car ownership. Share Zipcars in Atlanta, Baltimore, Boston, Chicago, London, Los Angeles, New York,Philadelphia, Pittsburgh, Portland, Providence, San Francisco, Seattle, Toronto, Vancouver andWashington DC. Zipcars also live on campus at universities across North America.

Sent from my iPhone

# EXHIBIT B

**From:** Benefitsassistancecenter@ufac-claims.com
**Date:** December 7, 2012, 1:10:04 AM EST
**To:** ▓▓▓▓▓▓
**Subject: Your Loss Damage Waiver Claim #**▓▓▓**7649**

REDACTED



Sedgwick CMS

12/6/2012

Claim Number:                          ▓▓▓▓7649
Date of Incident:                      10/27/2012
Rental Company:                        Zipcar
Rental Agreement/File #:
Rental Company Claim Number:   UNK

Dear Jessica Sigali:

Recently you submitted a claim under the Worldwide Auto Rental Insurance Coverage Program provided by Federal Insurance Company, a member of Chubb Group of Insurance Companies.

Upon review of your claim we find that we still have not received the following information:

- All documentation received

We have contacted the rental car company to secure supporting documents. At this time we find that we still have not received the following information. Please note that we will continue to contact them on your behalf; however, if you have any of these please submit them with the above documents to expedite the processing of your claim:

- Closed rental agreement
- Photos of damage
- Demand Letter
- Appraisal of or Estimate of Damage

**Please submit the required documents by either:**
Email:Benefitsassistancecenter@ufac-claims.com
**Fax:**  1-440-914-2889

**Mail:  Benefits Assistance Center**
**PO Box 89405**
**Cleveland, OH 44101-6405**

Please write your claim number on each page of the documents you submit to us.

Should you have any questions, or if we can be of assistance, please don't hesitate to contact us at our toll free number 1-866-491-1031, or by e-mail at Benefitsassistancecenter@ufac-claims.com.

Sincerely,
Rachyl Lemmerman
Benefits Assistance Center

# EXHIBIT C



Citi(R) Cards
P.O. Box 6013
Sioux Falls, SD 57117-6013

January 11, 2013



00000056 BB CCO 011 BDPANPEO AM1

MICHAEL SIGALL

**ACCOUNT NUMBER**
█████████9330

## REDACTED

Dear MICHAEL SIGALL:

Thank you for contacting our Customer Service Center. This letter is regarding your inquiry about the transaction dated 11/22/2012 in the amount of $486.34 made at ZIPCAR INC     866-494-7227 MA with account number ████████9330.

Please assist us with this investigation for $486.34 by promptly reviewing, completing, and returning the following information within 10 days of your receipt of this letter. If we don't receive your response, we will investigate the matter with the information we have available. The conditional credit may be reversed if we are not able to obtain sufficient information.

An important first step of this process is your attempt to contact the merchant, return any merchandise, and then complete the following:

"I was not satisfied with (CIRCLE ONE) goods/services purchased from this merchant for $486.34. I returned the merchandise or cancelled the service on _____ (date). I attempted to resolve this matter with the merchant on 10/25/12 (date)."

In addition, please provide the following information so that we may process your inquiry:

o  On a separate page, provide a detailed explanation of your dispute, including details of why you are not satisfied with the goods or services provided. Please describe exactly what you were promised compared to what was provided.
o  Any copies of documentation supporting your dispute such as itemized work orders (detailing parts and labor), sales vouchers, bids for service and repair estimates. In situations involving work that was duplicated by another merchant, please provide copies of documentation supporting the duplicate work.
o  An estimate or other documentation from a similar merchant indicating the work performed by the original merchant was incorrectly or unnecessarily performed.
o  If applicable, a copy of your lawsuit against the merchant and a copy of the judgment from the courts showing the case was ruled in your favor.
o  If applicable, a copy of the state or local law which supports your claim against this merchant.
o  The merchant's response to your attempt to resolve this matter or the reason you were unable to contact the merchant.

Cardmember Signature      Date Jan. 25, 2013

# EXHIBIT D



REDACTED

Citi(R) Cards
P.O. Box 6013
Sioux Falls, SD  57117-6013

February 07, 2013

███████████████████████████████

00000029 BB CCC 059 BDPA9PNN AM1

MICHAEL SIGALL

███████████████

ACCOUNT NUMBER

████████████9330

Dear MICHAEL SIGALL:

Thank you for contacting Citi(R) Cards.  This letter is in response to your inquiry about the transaction described below made with account number ███████9330:

| Date | Amount | Description | |
|------|--------|-------------|--|
| 11/22/2012 | $486.34 | ZIPCAR INC | ██████████ NA |

We have closed our investigation into this matter. We will be unable to assist you until the claim has been closed from the Visa Benefits Center. If they are unable to win the claim for you, then please contact us at that time. Thank you for your business.

We previously issued a conditional credit to your account for the amount in question pending the outcome of our investigation.  Now that the investigation is complete, we have rebilled your account for this charge along with any related fees and interest charges.  All adjustments will appear on your statement within 2 billing periods.

While we realize your account may be in good standing, Federal Regulations require us to remind you that we may report your account as past due to the consumer reporting agencies listed below if we do not receive the minimum payment by the due date shown on your billing statement.

| Experian | TransUnion LLC | Equifax Credit |
|----------|----------------|----------------|
| P.O. Box 2002 | Consumer Relations Center | Information Services |
| Allen, TX | P.O. Box 1000 | P.O. Box 740241 |
| 75013-0036 | Chester, PA | Atlanta, GA |
| | 19022 | 30374-0241 |

Sincerely,

Customer Service Team

FEDERAL REGULATIONS REQUIRE THE STATEMENT PRINTED ON THE REVERSE SIDE.

/FRFRM01/L1/TN/ER/5215/AM89284/D-514922110113//00029





# REDACTED

A conditional credit has been issued to your account while we investigate this matter on your behalf. Please respond within the next 10 days to: P.O. Box 6013, Sioux Falls, SD 57117-6013.

Sincerely,

Your Customer Service Team

FEDERAL REGULATIONS REQUIRE THE STATEMENT PRINTED ON THE REVERSE SIDE.

Enc.
/ADVCLMD/L1/SD/PH/UP/0033//D=514922110113/00056.