UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                             :

MICHAEL SIGALL and JESSICA SIGALL, on  :
behalf of plaintiffs and the class members    :
described herein,                                      :         13 Civ. 4552 (JPO)
                                           Plaintiffs,    :
                                                           :         OPINION AND ORDER
                     -v-                             :
                                                           :
ZIPCAR, INC., ZIPCAR NEW YORK, INC., and  :
CITIBANK, N.A.,                                       :
                                              Defendants.  :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/24/2014

J. PAUL OETKEN, District Judge:

       Plaintiffs Michael Sigall and Jessica Sigall ("Plaintiffs") bring this putative class action against Zipcar, Inc. and Zipcar New York, Inc. (collectively, "Zipcar") challenging Zipcar's practice of charging customers for vehicular damage without following certain procedures set forth in New York General Business Law ("GBL") § 396-z.  Plaintiffs have moved to certify a class pursuant to Federal Rule of Civil Procedure 23, and Zipcar has moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  For the reasons that follow, Zipcar's motion to dismiss is granted and Plaintiffs' motion for class certification is denied.

I.     Background

      A.     Factual Background

       The following facts are taken from the allegations in the Complaint and are assumed true for purposes of the instant motions.  (Dkt. No. 1 ("Compl.").)

           1.     The Parties

       Plaintiffs are a father and daughter who reside in New York.  Zipcar, Inc. and Zipcar New York, Inc. are Delaware corporations with their principal places of business located in

1

Massachusetts. Zipcar operates the world's largest car sharing service and markets itself as an alternative to "traditional rental car companies." (Compl. at 3 (quoting 2012 SEC Form 10-K ("10-K") at 8).) Rather than hosting vehicles at centralized locations, it "provide[s] . . . self-serviced vehicles in conveniently located reserved parking spaces" throughout major metropolitan areas and college campuses. (*Id.* at 2 (quoting 10-K at 4).) Rental car company Avis-Budget is in the process of acquiring Zipcar.

### 2. Zipcar Membership

A person becomes a Zipcar member, or "Zipster," by filling out an application on Zipcar's website. To be eligible, he or she must be of a specified age, hold a valid driver's license for the relevant jurisdiction, have a satisfactory driving record, and accurately and honestly complete the application. "Satisfying the foregoing criteria does not automatically give an applicant the right to become a Zipcar Member," however, and acceptance is "subject to approval by Zipcar in its sole discretion and . . . may be denied based upon additional criteria established from time to time by Zipcar and/or its insurance providers." (Compl., Ex. A ("Agreement") § 3.2.)

Once approved, members may reserve Zipcar vehicles, or "Zipcars," at particular locations by the hour or the day. The rental price includes the costs of gas and insurance. When the member arrives at the vehicle, the Zipcar recognizes the member's Zipcard and unlocks the doors. At the end of the reservation period, the member must return the Zipcar to its designated parking space and use the Zipcard to lock the doors.

Pursuant to the membership Agreement, members must keep a valid credit or debit card on file with Zipcar and "are billed for amounts due via credit or debit card." (*Id.* § 4.2.) Members are "responsible for any and all damage that occurs to a Zipcar vehicle while in the Member's possession or control." (*Id.* § 5.1.) As long as the member complies with the terms

and conditions of the Agreement, liability will generally be limited to a predetermined damage fee, which is calculated based upon the member's driving plan and the type of vehicle used. For an additional charge, eligible members can purchase a damage fee waiver that will reduce or eliminate the damage fee. The Agreement is expressly governed by Massachusetts law, and provides that "[a]ll disputes hereunder shall be resolved solely in the applicable state or federal courts of Massachusetts," and "the parties hereby consent to the exclusive jurisdiction of such courts . . . and waive any jurisdictional or venue defenses otherwise available." (*Id.* § 9.5.)

### 3. The Disputed Charge

In October 2012, Zipster Jessica Sigall rented a Zipcar using a credit card issued by Citibank to her father, Michael Sigall. The Zipcar's mirror was damaged by an unknown person, and Zipcar debited Mr. Sigall's credit card for a damage fee of $486.34. Plaintiffs had not agreed to the charge after the damage occurred, and no court had determined that they were liable. Plaintiffs subsequently made a claim with their insurer, which requested documentation regarding the damage from Zipcar. Zipcar did not provide these materials, and the insurer therefore has not paid the claim. Plaintiffs also made a complaint with Citibank, which conditionally credited their account but later re-billed them for the charge.

### B. Procedural Background

Plaintiffs initiated this action on July 1, 2013. (Dkt. No. 1.) Plaintiffs filed a motion for class certification and a motion to enter and continue their motion for class certification on July 18. (Dkt. Nos. 10 & 13.)[1] Zipcar moved to dismiss on September 9, 2013. (Dkt. No. 18.) Plaintiffs voluntarily dismissed their Truth in Lending Act claims against Citibank on January 30, 2014. (Dkt. No. 42.)

---

[1] Plaintiffs' motion to enter and continue was filed based upon the belief that it was necessary to avoid the possibility of having their class claims mooted by a Rule 68 offer of judgment or other tender.

## II. Legal Standards

### A. Motion to Dismiss

On a motion to dismiss for failure to state a claim, a court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, the court will not consider mere conclusory allegations which lack a factual basis, *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010), or "[t]hreadbare recitals of the elements of a cause of action" that amount to no more than legal conclusions, *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). If the complaint does not provide a basis for the court to plausibly infer that the defendant is liable for the misconduct alleged, the motion must be granted. *See id.* at 678.

### B. Class Certification

On a motion to certify a class action pursuant to Rule 23, the movant must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and must show that one of the three additional requirements of Rule 23(b) is satisfied. *Marisol A. v. Guiliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). If a motion to dismiss is granted as to all class claims, the motion for class certification will be denied as moot.

## III. Discussion

Plaintiffs assert three causes of action against Zipcar. Count I seeks a declaration that Zipcar must comply with GBL § 396-z and that "any charges for damages imposed without strict compliance with . . . § 396-z are void"; an injunction requiring Zipcar to comply with § 396-z; and restitution or disgorgement of all amounts obtained from damages and damage fee waivers. Count II asserts that Zipcar's alleged non-compliance with § 396-z and misrepresentations to members and financial institutions constitute deceptive business practices under GBL § 349, and

4

seeks declaratory, injunctive, and monetary relief.  Count III asserts common law fraud based upon the same alleged non-compliance and misrepresentations and seeks damages.

      A.      GBL § 396-z

Section 396-z, entitled "Rental Vehicle Protections," regulates various practices of "rental vehicle companies." GBL § 396-z(1)(c).  Under subsection 3, a rental vehicle company cannot hold an authorized driver liable for damages without following certain procedures, such as performing a physical survey of the vehicle, issuing an incident report, and allowing the renter to inspect the vehicle.  Plaintiffs allege that Zipcar is a rental vehicle company subject to § 396-z and that it failed to follow the procedures therein for charging renters for vehicular damage.

"It is undisputed that [P]laintiff[s] do[] not possess a private right of action under section 396-z." *Han v. Hertz Corp.*, 12 A.D.3d 195, 196 (N.Y. App. Div. 2004); *see also Goldberg v. Enterprise Rent-A-Car Co.*, 14 A.D.3d 417, 417 (N.Y. App. Div. 2005) (same), *abrogated on other grounds*, *Rhodes v. Herz*, 84 A.D.3d 1, 11 n.3 (N.Y. App. Div. 2011).  "As a federal court applying state law, [this Court is] generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (citation and quotation marks omitted); *see also United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) ("It is axiomatic . . . that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes.").

Plaintiffs attempt to circumvent the clear holdings of *Han* and *Goldberg* by relying upon § 396-z(11), which provides that "[a]ny clause or provision of a rental agreement inconsistent with the provisions of this section shall be deemed void as against public policy."  Plaintiffs argue that this subsection contemplates that courts will invalidate non-complying contractual provisions, and therefore provides a basis for the instant putative class action.  While a statutory provision "declaring certain contracts void . . . necessarily contemplates that the issue of

voidness under its criteria may be litigated somewhere," and "[a]t the very least . . . [may] be raised defensively in private litigation to preclude enforcement of a[] . . . contract," it does not automatically create a private right of action. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 18 (1979). "[A] person with the power to void a contract *ordinarily* may resort to have the contract rescinded and to obtain restitution of consideration paid," but whether such a right exists depends upon whether the legislature "intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Id.* at 18-19 (citations omitted) (emphasis added). Thus, a statutory provision can serve as a shield without necessarily becoming a sword.

Section 396-z is a case in point. Although the New York Court of Appeals has established that a renter may assert non-compliance with § 396-z as an affirmative defense, *Master Cars, Inc. v. Walters*, 95 N.Y.2d 395, 397-99 (2000), the Appellate Division has held that § 396-z cannot provide a basis for suit, *Goldberg*, 14 A.D.3d at 417; *Han*, 12 A.D.3d at 196 (N.Y. App. Div. 2004). This distinction makes sense given the punitive and coercive power of lawsuits and the legislative bargain struck between competing policy interests. As the Court explained in *Goldberg*, § 396-z provides the Attorney General with "broad enforcement powers," and it would be unfair to infer a private cause of action "where the Legislature has provided a potent official enforcement mechanism." 14 A.D.3d at 417 (citations and quotation marks omitted). This principle is particularly apt where, as here, Plaintiffs seek to bring a class action—itself a potent enforcement mechanism.

Nor are Plaintiffs permitted to "circumvent the legislative preclusion of private lawsuits for violation of [§ 396-z]" by "rephrasing a claim under section 396-z" as claims that are themselves "dependent on the allegation that [Zipcar's] . . . contract [is] automatically voided by

6

[that section]." *Han*, 12 A.D.3d at 196 (dismissing putative class action seeking declaration that defendant's automobile rental contracts were void for failure to abide by the disclosure requirements of § 396-z because that section does not provide a private right of action).[2] Accordingly, Plaintiffs' claims for declaratory and injunctive relief based upon alleged violations of § 396-z must be dismissed. Additionally, because Plaintiffs' restitution and disgorgement claims are premised entirely upon alleged violations of the statute, they too must be dismissed. *See Goldberg*, 14 A.D.3d at 417 (dismissing restitution claims based upon violations of § 396-z because plaintiff did not allege any actionable wrongs independent of the requirements of the statute); *Han*, 12 A.D.3d at 196 (dismissing unjust enrichment claims on the same basis).

### B.     GBL § 349

Although there is no private right of action under § 396-z, Plaintiffs still may bring a claim under § 349 for deceptive acts or practices, provided it is a "free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under" § 396-z, *Broder*, 418 F.3d at 200, and not merely an "alleg[ation] that a violation of [§ 396-z] necessarily constitutes a deceptive act under Section 349," *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Thus, in *Goldberg* and *Han*, the Appellate Division dismissed the plaintiffs' § 349 claims not because the plaintiffs lacked standing, but because they failed to plead an element of the claim. *Goldberg*, 14 A.D.3d at 417-18 (dismissing § 349 claims for failure to allege damages); *Han*, 12 A.D.3d at 196-97 (same). *Cf. Conboy*, 241 F.3d at 258 (dismissing § 349

---

[2] Plaintiffs cite numerous New York state decisions finding that provisions similar to § 396-z confer a private right of action, but tellingly omit any analysis of *Han* and *Goldberg*, the only two cases directly on point. As explained in *Transamerica*, whether a private right of action for rescission, injunction, restitution, or other "customary legal incidents of voidness" follows from § 396-z depends upon legislative intent, and the Appellate Division has already examined and resolved this very issue. The fact that similar statutes provide private rights of action is irrelevant.

claims for violation of GBL § 601, which does not confer a private cause of action, because the plaintiffs failed to indicate how the defendant's conduct was deceptive).

To state a § 349 claim, Plaintiffs must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). A deceptive practice is one which is "dishonest or misleading in a material respect"; a deceptive act is "defined objectively" as an act "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citations and quotation marks omitted). Plaintiffs assert four allegedly deceptive acts or practices by Zipcar: (i) representing to members that they are liable for damages when they are not under § 396-z; (ii) collecting amounts for damage liability imposed without complying with § 396-z; (iii) representing to issuers of credit and debit cards that charges were authorized when they were not; and (iv) selling damage fee waivers to waive liability that could not have been imposed without complying with § 396-z. Because each of these grounds relies upon Zipcar's alleged violation of § 396-z, rather than a deceptive act or practice independent of such violation, none can support a § 349 claim. The interplay between statutory provisions which do not confer a private right of action, such as § 396-z, and other causes of action has recently been explained in a line of New York state and federal decisions.

In *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, the purchaser of a condominium apartment brought claims for fraud and fraudulent concealment against the building's sponsor based upon the sponsor's failure to disclose construction and design defects in its offering plan amendments.[3] 12 N.Y.3d 236, 240 (2009). Disclosure of these materials was required under the Martin Act, GBL art. 23-a, which does not confer a private cause of action and leaves

---

[3] An offering plan is a document given to prospective buyers which provides detailed information regarding the condominium.

enforcement to the Attorney General.  *Id.* at 244-45.  The New York Court of Appeals dismissed the case, reasoning that "[b]ut for the Martin Act . . . defendants did not have to make the disclosures in the amendments.  Thus, to accept Kerusa's pleading as valid would invite a backdoor private cause of action to enforce the Martin Act in contradiction of [its] holding . . . that no private right to enforce that statute exists."  *Id.* at 245.  "That Kerusa alleged the elements of common-law fraud [did] not transmute a prohibited private cause of action to enforce the Martin Act disclosure requirements into an independent common-law tort."  *Id.* at 247.  In a footnote, the Court qualified that it "need not and [did] not decide whether the alleged misrepresentation of an item of information that the Martin Act . . . require[s] to be disclosed would support a cause of action for fraud, so long as the elements of common-law fraud are pleaded."  *Id.* at 247 n.5.  But the plaintiff's fraud claim, which "relie[d] entirely on alleged omissions from filings required by the Martin Act," did not present such a case.  *Id.* at 247.

The Eastern District of New York faced a similar question two years later.  In *Schlessinger v. Valspar Corporation*, furniture buyers brought a putative class action against a provider of furniture protection plans for breach of contract and violation of § 349 based upon the defendant's violation of GBL § 395-a, which generally prohibits providers of maintenance agreements from terminating the agreement during the contract term.  817 F. Supp. 2d 100, 101 (E.D.N.Y. 2011).  Under the terms of the plan, the defendant would endeavor to repair or replace any damaged furniture if the damage occurred during the contract period.  However, if the furniture store where the plaintiff purchased the furniture closed, the defendant would instead issue a refund of the plan price.  *Id.* at 101-02.  The plaintiffs argued that the store closure provision was voided by § 395-a, and the defendant therefore breached the contracts by denying their claims under the plan and "engaged in 'deceptive practices' . . . by selling maintenance

agreements which contain[ed] the purportedly illicit store closure provision." *Id.* at 102 (citation omitted).

After concluding that § 395-a does not provide a private right of action, the Court considered "the propriety of using section 349 and breach of contract claims as [] vehicles to allege violations under section 395-a." *Id.* at 105.  Relying upon *Kerusa*, the Court dismissed both.  With respect to the breach of contract claim, it reasoned that there could be a breach only if § 395-a was incorporated into the contract; otherwise, the store closure provision was valid and the defendant could rely upon it in denying the plaintiffs' claims.  But this meant that the "plaintiffs' common law claim relie[d] *entirely* on incorporating the requirements of a statute with no private right of action," and was therefore "precisely the form of 'artful pleading' . . . that state courts ha[d] identified as making an impermissible run around statutes with no private right of action."  *Id.*  The § 349 claim was subject to dismissal for the same reason:

> As with plaintiffs' breach of contract claim, the section 349 claim also relies "entirely" on the prohibitions of section 395-a.  The contract between the parties was not facially deceptive.  In other words, plaintiffs do not dispute that the contract they signed informed them that the defendant would refund the cost of the agreement in the event that the retail store went out of business.  Rather, the deception alleged necessarily requires reading section 395-a into the contract.

*Id.* at 110-11.

On appeal, the Second Circuit certified both questions to the New York Court of Appeals, *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 89 (2d Cir. 2012), which adopted and expounded upon the district court's conclusion, *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166 (2013).  In approving dismissal of the breach of contract claim, the Court observed that "this case [was] much like *Kerusa*, which involved a common-law tort claim," because "the purported claim would not have existed absent provisions in a statute" that did not provide the plaintiffs with a

10

private right of action. 21 N.Y.3d at 171. The same rationale for dismissal was therefore applicable: "to accept [the claim] as valid would invite a backdoor private cause of action . . . in contradiction to . . . holding . . . that no private right to enforce that statute exists." *Id.* at 171-72 (quoting *Kerusa*, 12 N.Y.3d at 245).

With respect to the § 349 claim, the Court understood the plaintiffs to argue that the defendant's "violation of section 395-a is perforce a violation of section 349(a) because, by inserting an unlawful provision in the contract, Valspar impliedly represented that this provision was valid and thereby engaged in a deceptive act or practice." *Id.* at 172. *Cf. Schlessinger*, 686 F.3d at 88 (interpreting the plaintiffs' § 349 claim "to argue that through [the inclusion of the store closure provision], Valspar deceived them as to the substance of their legal rights"). But this reasoning was "too attenuated to be plausible," because "[s]ection 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers." *Schlessinger*, 21 N.Y.3d at 172. It could not "fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being 'deceptive,'" as "[s]uch an interpretation would stretch the statute beyond its natural bounds to cover virtually all misconduct by businesses that deal with consumers." *Id.*; *see also Fuchs v. Wachovia Mortg. Corp.*, 9 Misc.3d 1129(A), at *2-3 (N.Y. Sup. Ct. Nov. 15, 2005) (dismissing § 349 claim based upon defendant charging an allegedly illicit document preparation fee because defendant clearly represented that it would charge such a fee and did not have a duty to advise plaintiffs that the charge violated the law or to disclose the relevant provisions of the law). The Second Circuit subsequently affirmed the district court's dismissal. *Schlessinger v. Valspar Corp.*, 723 F.3d 396 (2d Cir. 2013).

The decisions in *Kerusa* and *Schlessinger* require dismissal of Plaintiffs' § 349 claim.[4] Each of the allegedly deceptive acts or practices relies upon the existence of § 396-z and the assumption that it voids provisions in the Agreement making members liable for damages and authorizing Zipcar to charge them for such costs. "But for" the existence of § 396-z, Plaintiffs would have no basis to allege that Zipcar misrepresented that members are liable for damages and that Zipcar will collect such damages, because the Agreement plainly states that they are and that Zipcar will. Nor could Plaintiffs allege that Zipcar misrepresented its authority to charge members' credit and debit cards to financial institutions, because the Agreement plainly authorized Zipcar to do so. Finally, Plaintiffs would not have a basis to allege that Zipcar sold them worthless damage fee waivers, because the waivers could be worthless only if the provision in the Agreement authorizing Zipcar to charge members for damages was voided by § 396-z.[5]

Put differently, Plaintiffs cannot dispute the facial validity of the Agreement. "Rather, the deception alleged necessarily requires reading section [396-z] into the contract." *Schlessinger*, 817 F. Supp. 2d at 111. To argue that Zipcar "deceived" them as to their legal rights under § 396-z simply by including such provisions in the Agreement is "too attenuated to be plausible" and misconstrues the purpose and scope of § 349. "[T]he inclusion of the [damage provisions] at issue here is not inherently deceptive but problematic only by virtue of [§ 396-z],"

---

[4] Plaintiffs cite three decisions of New York intermediate and lower state courts permitting consumers to bring § 349 claims against defendants for printing certain restrictions on gift cards in small type, allegedly in violation of § 396-i, which requires the terms and conditions of a gift certificate store credit to be clearly and conspicuously stated and does not confer a private right of action. *Lonner v. Simon Prop. Group, Inc.*, 57 A.D.3d 100 (N.Y. 2d Dep't 2008), *Goldman v. Simon Prop. Group, Inc.*, 58 A.D.3d 208 (N.Y. 2d Dep't 2008); *Sheinkin v. Simon Prop. Group, Inc.*, 33 Misc.2d 287 (N.Y. Sup. Ct. 2011). These cases, however, were expressly distinguished by the New York Court of Appeals in *Schlessinger* on the basis that "[p]rinting contract clauses in small type may tend, in itself, to deceive consumers," but "[i]ncluding a termination provision in a maintenance agreement has no such tendency." 21 N.Y.3d at 173. As discussed above, this case is analogous to and therefore governed by *Schlessinger*.

[5] Plaintiffs do not allege that they purchased a damage fee waiver.

and "Plaintiffs therefore seek . . . to use a private right of action in § 349[] to enforce the statutory prohibition in [§ 396-z]." *Schlessinger*, 723 F.3d at 399. Such circumvention of the legislature's preclusion of private rights of action under § 396-z is impermissible.[6]

### C. Fraud

To state a claim for fraud, Plaintiffs must allege: "1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992) (citation omitted), *abrogated on other grounds*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 327-28 (2d Cir. 2003).[7] In support of their fraud claim, Plaintiffs allege that Zipcar committed fraud by (i) representing to members that they are liable for damages when they are not under § 396-z; (ii) collecting amounts for damage liability imposed without complying with § 396-z; and (iii) representing to issuers of credit and debit cards that charges were authorized when they were not. These grounds mirror grounds (i)-(iii) in support of Plaintiffs' § 349 claim, and are subject to dismissal under the same analysis. Because Plaintiffs' common law fraud claim "would not exist but for the statute," it is "predicated solely

---

[6] Even if the Court were to conclude otherwise, Plaintiffs cannot satisfy the materially misleading element of a § 349 claim because the purportedly deceptive act was fully disclosed in the agreement. *See, e.g.*, *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) ("New York courts have dismissed claims for having failed to satisfy this element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff.") (citations omitted), *aff'd*, 519 Fed. App'x 77 (2d Cir. 2013).

[7] The Massachusetts choice-of-law provision does not change the Court's analysis, because the elements of common law fraud in Massachusetts are the same. *See, e.g.*, *Juarez v. Select Portfolio Serv., Inc.*, 708 F.3d 269, 279 (1st Cir. 2013) (citation omitted).

on a violation of" § 396-z and is therefore barred. *Assured Guard (UK) Ltd. v. JP Morgan Inv. Mgmt. Inc.*, 939 N.Y.S.2d 274, 279 (citing *Kerusa*).[8]

### IV.   Conclusion

For the foregoing reasons:

Zipcar's motion to dismiss is GRANTED; and

Plaintiffs' motion for class certification is DENIED as moot.

The Clerk of Court is directed to terminate the motions at docket numbers 13 and 18 and to close this case.

SO ORDERED.

Dated: New York, New York
       February 24, 2014

_____
J. PAUL OETKEN
United States District Judge

---

[8] Because the Court concludes that Plaintiffs do not have a private cause of action under § 396-z and have failed to state a claim under § 349 or for fraud, it is not necessary to reach Zipcar's argument that § 396-z does not apply to Zipcar.